UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 04-50066 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KEVIN LAMAR BROOKS | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Record Documents 60, 64], filed by the petitioner, Kevin Lamar Brooks. Brooks seeks an order from the Court vacating and setting aside the judgment of conviction and sentence on the basis that he was denied his constitutional right to effective assistance of counsel. For the reasons discussed herein, Brooks' motion is **DENIED**.

## FACTUAL BACKGROUND

On December 9, 2003, officers from the Shreveport Police Department Street Level Interdiction Unit executed a search warrant at 2650 Bibb Street in Shreveport, Louisiana. [Trial Tr. pp. 14-15]. Upon entering the residence, officers located defendant Kevin Brooks in the living room and a female named Rita Caldwell in the bedroom. Id. at pp.16-17, 31. The officers searched the premises and located a .9mm Hi Point rifle, two loaded magazines, and .9mm rounds between the mattress and box springs in the master bedroom. Id. at pp. 32-33.

At some point, the officers determined the firearm was illegally possessed and placed the defendant under arrest. Id. at p. 17. After the defendant was read his Miranda

rights and indicated that he understood those rights, defendant "stated that the gun was his and he had the papers to prove it." Id. at p. 23.  Officers seized from the residence mail with the defendant's name and the 2650 Bibb Street address on it.  Id. at pp. 18, 35-36. Officers also located the defendant's driver's license inside a dresser drawer next to the bed in the master bedroom.  Id. at pp. 19-20.

At trial, defendant stipulated (1) that he had previously been convicted of a felony, and (2) that the firearm listed in the indictment is a firearm as defined by statute and was manufactured outside the state of Louisiana. Id. at pp. 6-7.  However, defendant contested his possession of the firearm.  Id. at pp. 12-13.  Defendant presented the testimony of Rufus Hodges who testified that he leased the house at 2650 Bibb Street and had been living there for about a year prior to the December 9, 2003 search. Id. at p. 43.  Utility bills from December 2003 in Hodges' name were introduced into evidence to support his testimony. [Trial Exs. 3 and 4].  Hodges testified that defendant worked for him and would occasionally come to his house before work, but that he was not present on December 9, 2003 and left a key for defendant to enter the home.  [Trial Tr., pp. 50-51].  Hodges also testified that the .9mm gun belonged to Donald Brooks, a friend of Hodges who had brought the gun over to his house on the Sunday before the December 9, 2003 search. Id. at pp. 53-54.

Gary Williams, office manager of Britain's Pawn Shop, also testified for the defense. Williams presented a sales receipt from December 21, 1998 showing the .9mm gun at issue was sold to Donald Roshawn Brooks.  Id. at pp. 63-65; Trial Ex. 5.  Donald Brooks, defendant's first cousin, then testified that he has purchased the gun from Britain's Pawn

Shop in 1998, that he always carried it for protection, and that he left the gun at Hodges' home the night before defendant was arrested. Id. at pp. 70-72.

## PROCEDURAL HISTORY

On April 29, 2004, defendant Brooks was indicted by a federal grand jury in Shreveport, Louisiana for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [Record Document 1]. Following a one-day jury trial, Brooks was found guilty and sentenced to a term of 63 months imprisonment. [Record Documents 31, 39]. On September 22, 2006, the United States Court of Appeals for the Fifth Circuit affirmed his conviction. [Record Document 57]. Two months later, Brooks filed a Motion Under 28 U.S.C. § 2255 seeking an order vacating the judgment and sentence previously entered herein. [Record Document 60]. He later filed two memoranda [Record Documents 61, 62] and an Amended Motion Under 28 U.S.C. § 2255. [Record Document 64]. Brooks claims his conviction and sentence should be vacated because he received ineffective assistance of counsel as a result of his trial counsel's failure to challenge the search warrant as "stale," failure to file a motion to suppress his allegedly inculpatory statements, failure to call a witness at trial, refusing to allow defendant to testify on his own behalf, and his sentencing counsel's failure to object to a four-point enhancement based on drug activity. See Record Document 64.

## LAW AND ANALYSIS

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), quoting United States v. Frady, 456 U.S.

152, 164, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final judgment commands respect." Frady, 456 U.S. at 164-65, 102 S.Ct. at 1593. Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them for the first time on collateral review in the absence of both "cause" for his procedural default and "actual prejudice" resulting from the error. Id. at 168. This "procedural-default rule is neither a statutory nor constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003). However, requiring a criminal defendant to bring claims of ineffective assistance of counsel on a direct appeal does not promote these objectives. Id. A claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to

develop the record on the merits of these allegations. United States v. Alanis, 88 Fed. Appx. 15, 19 (5th Cir. 2004). Thus, a criminal defendant is permitted to bring ineffective assistance of counsel claims in a collateral proceeding under § 2255, regardless of whether such claims could have been raised on direct appeal. Id.

To prevail on his claims of ineffective assistance of counsel, Brooks must prove that (1) his counsel's performance was deficient, and (2) his counsel's deficient performance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, Gonzales must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 466 U.S. at 687, 104 S.Ct. at 2064. This requires a showing that "counsel's representation fell below an objective standard of reasonableness." Id., 466 U.S. at 688, 104 S.Ct. at 2064. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id., 466 U.S. at 690, 104 S.Ct. at 2066.

Under the second prong of the Strickland test, Brooks must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. If Brooks fails to establish either prong of the Strickland test, his claim of ineffective assistance of counsel must fail. See Tucker v.

Johnson, 115 F.3d 276, 280 (5th Cir. 1997); Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994); Williams v. Collins, 16 F.3d 626, 631 (5th Cir. 1994).

### A. Failure to File Motion to Suppress Search Warrant

As an initial matter, Brooks claims his trial counsel "never explored whether the search, after Movant was secured, should have been challenged on the basis of staleness of the warrant itself." [Record Document 64, p.8]. Counsel's failure to file a motion to suppress evidence may constitute deficient performance "when the evidence would have been suppressed if objected to." Martin v. Maxey, 98 F.3d 844, 848 (5th Cir. 1996).

Article 163 of the Louisiana Code of Criminal Procedure states that "[a] search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance." Although a warrant may become stale prior to this time if the facts and circumstances at the time of its execution show that probable cause no longer exists, "staleness is only an issue when the passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed." State v. Casey, 1999-0023 (La. 1/26/00), 775 So.2d 1022, 1028 (quoting State v. Tate, 407 So.2d 1033, 1137 (La. 1981)). Brooks' argument that the warrant was "stale" is based on the fact that the search warrant was signed and issued on December 4, 2003, but was not executed until five days later on December 9, 2003. See Gov't Ex. A. There are no allegations or evidence, however, that the probable cause recited in the affidavit no longer existed at the time the warrant was executed, or that the search warrant otherwise failed to satisfy constitutional requirements. Execution of the search warrant at issue, only five days after its issuance, simply does not render the information in the warrant "stale." See e.g., United States v. Morrison, 594 F.3d 626, 631 (8th Cir. 2010) (holding that a three to four day period between the facts recited

in the affidavit and the execution of the search warrant did not render the information presumptively stale); United States v. Lester, 285 Fed.Appx. 542, 546 (10th Cir. 2008) (Information contained in a search warrant does not become stale merely by the number of days that has elapsed since it was issued). Counsel's failure to file a meritless motion to suppress the search warrant does not fall below an objective standard of reasonableness and does not constitute "deficient performance." See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

### B. Failure to File Motion to Suppress Inculpatory Statements

Brooks claims his counsel also failed to file a motion to suppress the statements he gave to officers after his arrest because "there is no showing or other evidence that [his] Miranda rights were given to him"or that he waived his Miranda rights. [Record Document 61, ¶ 13]. Although Brooks' allegations are somewhat confusing, his claim appears to be based on the fact that the officers did not present him with a "waiver card" or other "papers" for him to sign "to show and prove that [he] did in fact waive [his] constitutional rights to be questioned by the Police." [Record Document 62, ¶ 13].

For a waiver to be valid, the decision to waive one's Miranda rights must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Cardenas, 410 F.3d 287, 293 (5th Cir. 2005). However, a written waiver is not required, nor does an oral waiver need to be express. North Carolina v. Butler, 441 U.S. 369, 375-76, 99 S.Ct. 1755, 1758-59, 60 L.Ed.2d 286 (1979) (an express written or oral statement of waiver "is not inevitably either necessary or sufficient to establish waiver"). At trial, Corporal Jeff Peters and Officer Chad Denham each testified that, after

being arrested and prior to making any statements, Brooks was read his Miranda rights and acknowledged that he understood his rights. [Trial Tr. pp. 22-23, 34-35]. Brooks neither alleges nor points to any evidence in the record that his oral waiver of his Miranda rights was the product of intimidation, coercion, or deception. The failure to have Brooks sign a written waiver form, standing alone, simply does not render his waiver involuntary. See, United States v. Willis, 525 F.2d 657, 659 (5th Cir. 1976) (the fact that defendant failed to sign waiver form is not enough, in itself, to bar admission of his confession, where other circumstances indicate that the statement was voluntarily given). Thus, counsel's failure to file a frivolous motion to suppress Brooks' inculpatory statements, based on his alleged involuntary waiver, does not fall below an objective standard of reasonableness. See Gibson, supra, 55 F.3d at 179.

### C. Failure to Call Witness

Brooks next argues that he received ineffective assistance of counsel because his trial counsel was aware that Rita Caldwell was available and willing to testify on behalf of the defense but failed to call her as a witness at trial. [Record Document 64, p.11].

The Fifth Circuit has repeatedly held that "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on such a claim, Brooks must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to his defense. Id.; Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). He must also establish

prejudice, *i.e.*, a "'reasonable probability' that the uncalled witness would have made [a] difference to the result." Alexander, 775 F.2d at 603.

Brooks claims that he requested his attorney call Rita Caldwell as a witness and that Caldwell would have testified that she did not hear the officers give Miranda warnings, nor did she hear Brooks admitting to owning the weapon or ammunition. [Record Document 64, p.11]. Yet, there is absolutely no indication in the record—beyond Brooks' mere conclusory allegation—that Caldwell was in fact willing to testify and that her testimony would have been favorable to his defense. See Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985) (Where the only evidence of a missing witness's testimony is from the defendant, the Court should view his claims of ineffective assistance with great caution); see also, Day, 566 F.3d at 538 (despite the affidavit in which the expert witness analyzed and rebutted much of the State's testimony, the affidavit contained no statements indicating he was available to testify at trial, that he would have done so, or that he would had testified in accord with the opinions and conclusions therein). Brooks' own speculations as to what Caldwell might have contributed through her testimony are simply insufficient to establish a "reasonable probability" that the result of the proceedings would have been different.

### D. Refusing to Allow Defendant to Testify on His Own Behalf

Brooks claims that prior to and during trial he "repeatedly advised [trial counsel] of his desire to testify in his own behalf," and that his counsel was ineffective for refusing to call him to testify. [Record Document 64, p.11].

A criminal defendant has a well-established right to testify and that right may be waived only by the defendant, not his counsel. United States v. Mullins 315 F.3d 449, 452

(5th Cir. 2002). In applying the Strickland standard, courts should keep in mind that "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." Id. (quoting Robison v. Johnson, 151 F.3d 256, 262 (5th Cir. 1998). However, it cannot be permissible trial strategy for counsel to override the ultimate decision of a defendant to testify. Id. A defendant's failure to insist on testifying in open court is not dispositive of the issue as to whether he acquiesced in his attorney's decision that he not testify. Id. ("We resist the suggestion that we ought to insist that a defendant directly address the court at the pain of waiver to assert his right to testify when his counsel will not abide his decision.").

Even if the Court were to assume *arguendo* that counsel performed deficiently under Strickland by effectively denying Brooks' his right to testify, Brooks still must establish that counsel's deficient performance prejudiced his defense. Id., 315 F.3d at 456. The Court finds that Brooks has not succeeded in making this showing. Although Brooks offers no declaration of his proposed testimony, it can be assumed that Brooks would have testified that he did not reside at the 2650 Bibb Street address, that he did not own the gun, and that he was not in "possession" of the gun. But rather than call Brooks to testify and expose the jury to his criminal record and the drug activity associated with the search warrant through rigorous cross-examination, counsel offered the testimony of Rufus Hodges and Donald Brooks to challenge the police officers' testimony. Hodges testified that he was leasing the home at 2650 Bibb Street, that the defendant had never resided at the home, and that he had never seen the defendant with the gun. [Trial Tr. pp. 43-54]. Donald Brooks testified that he purchased the gun in 1998 and that he left the gun at Hodges' home the day before the search warrant was executed. [Trial Tr. pp. 68-73].

Thus, counsel was able to present Brooks' version of the events to the jury without his testimony. As the Fifth Circuit recognized in Mullins, a denial by Brooks of the charged offense would have come at a high price:

> If [defendant] took the stand his extensive criminal record and drug use would have come into evidence. The likelihood that the jury would credit the felon over the police officer whose testimony is supported by the defendant's signed statement does not meet the reasonable probability of a different outcome test. [The Court] can say only that his testimony *might* have persuaded, but not that there is a reasonable probability that it would have done so. In service of finality, the second prong of Strickland raises high the bar to relief, and here it has not been cleared.

Mullins, 315 F.3d at 456 (emphasis in original).

Accordingly, the Court must conclude that Brooks' was not prejudiced by his counsel's alleged refusal to allow Brooks to testify on his own behalf.

### E.    Failure to Object to Four-Point Enhancement Based on Drug Activity

Lastly, Brooks claims he received ineffective assistance from his appellate counsel because his counsel failed to challenge the factual findings in the Pre-Sentence Investigation Report ("PSR") concerning drug-activity associated with the underlying offense and that a four-point enhancement was erroneously added to his base offense level. [Record Document 64, p.14].

According to the PSR, the Shreveport Police Department received information from a confidential informant concerning on-going narcotics distribution at 2650 Bibb Street. On November 18, 2003 and December 3, 2003, undercover officers purchased crack cocaine from Brooks at that address. [PSR ¶ 6]. Upon executing the search warrant and entering the 2650 Bibb Street residence on December 9, 2003, officers smelled the odor of burning

marijuana and found .1 grams of marijuana in the living room.  [PSR ¶ 7].  As a result of this drug activity, an additional four points were added to Brooks' base offense level pursuant to U.S.S.G. § 2K2.1(b)(5).   [PSR ¶ 15].

In the wake of Booker, a sentencing judge "is entitled to find by a preponderance of the evidence all of the facts relevant to the determination of a Guideline sentencing range."  United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005).  Where, as here, the facts contained in the PSR have an adequate evidentiary basis and remain uncontested, the court can adopt those facts without inquiry.  United States v. Puig-Infante, 19 F.3d 929, 943 (5th Cir. 1994).  In order to establish a claim of ineffective assistance of counsel for failure to challenge those factual findings, the defendant must show that the information relied on by the sentencing court is "materially untrue."  Id.

During the sentencing hearing, the Government alluded to the two narcotic buys from Brooks that occurred prior to his arrest.  [Sentencing Tr. P.8].  Brooks was given an opportunity to speak, and while he again claimed his innocence of the charged offense (felon in possession of a firearm), he did not contest the factual findings of the PSR or otherwise claim his innocence with respect to the drug activity.  Id. at p. 8.  The only support now offered by Brooks for the proposition that his attorney should have objected to the PSR's findings is his allegation that "the Police found no indicia of drug trafficking which would serve to support or buttress the 4 point increase."  [Record Document 64, pp. 14-15].  Brooks' mere allegation is woefully insufficient to establish that the factual averments in the PSR are "materially untrue" or that the four-point enhancement was erroneously applied.  Accordingly, the Court cannot conclude that his appellate counsel's

failure to object to the PSR constitutes "deficient performance" or that Brooks' was prejudiced by such performance.

## CONCLUSION

The Court finds Brooks' claims of ineffective assistance of counsel are without merit as he is unable to demonstrate that his counsel's performance was "deficient" or that he was otherwise prejudiced by his counsel's performance. Accordingly, Brooks' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Record Documents 60, 64] shall be **DENIED.**

An order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 16th day of March, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE